## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

JAMES T. POE,                    )
                                 )
        Plaintiff,               )
                                 )
    v.                           )        No. 4:18-cv-1839-RLW
                                 )
CORIZON HEALTH, et al.,          )
                                 )
        Defendants.              )

### MEMORANDUM AND ORDER

This matter is before the Court on the motion of plaintiff James T. Poe, an inmate at the

Southeast Correctional Center ("SECC"), for leave to commence this civil action without

prepayment of the required filing fee. Having reviewed the motion and the financial information

submitted in support, the Court has determined to grant the motion, and assess an initial partial

filing fee of $1.04. *See* 28 U.S.C. § 1915(b)(1). In addition, for the reasons discussed below, the

Court will dismiss the complaint, without prejudice.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action *in forma pauperis*

is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his

prison account to pay the entire fee, the Court must assess and, when funds exist, collect an

initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the

prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-

month period. After payment of the initial partial filing fee, the prisoner is required to make

monthly payments of 20 percent of the preceding month's income credited to the prisoner's

account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id.*

In support of the instant motion, plaintiff submitted an inmate account statement showing an average monthly balance of $5.22. The Court will therefore assess an initial partial filing fee of $1.04, which is twenty percent of plaintiff's average monthly balance.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed *in forma pauperis* if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. A complaint fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Determining whether a claim is facially plausible is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must assume the veracity of well-pleaded facts, but need not accept as true "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555); *see also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but "does not accept as true any legal conclusion couched as a factual allegation.").

*Pro se* complaints must be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). This means that if the essence of an allegation is discernible, the court should construe the complaint in a way that permits the plaintiff's claim to be construed within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even *pro se*

complaints must allege facts which, if true, state a claim for relief as a matter of law, *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980), and courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint." *Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004). Additionally, giving a *pro se* complaint the benefit of a liberal construction does not mean that procedural rules must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States,* 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against Corizon Health, Inc., Shannon Oaks (a nurse practitioner at the Eastern Reception, Diagnostic and Correctional Center ("ERDCC")), Ruth Whitehead (the Director of Nursing at the Missouri Eastern Correctional Center ("MECC")), Dr. Williams (a doctor at MECC), and Molly Leija (the Health Services Administrator at SECC). He sues the defendants in their official and individual capacities.

According to the complaint, while plaintiff was incarcerated at ERDCC between September 2015 and February 2017, he began having symptoms of pain and blurred vision in his right eye, excruciating migraine headaches, dizziness, a numbing and burning sensation along the nape of his neck, and a deformity in the same area of his neck that occurred over time. He filed a request for medical care, and was seen by Oaks on February 22, 2016. Upon examination, Oaks noted plaintiff was hypertensive, and she ordered an EKG and prescribed Propanolol. Plaintiff asked Oaks to order lab/blood work and a CT scan, but she did not do so. Plaintiff saw Oaks again on April 4, 2016. He repeated his requests for lab/blood work and a CT scan, but Oaks did not grant them. Plaintiff filed an Informal Resolution Request ("IRR"). In July 2016, plaintiff had an x-ray that revealed mild arthritis in his neck. Plaintiff believed this

3

finding did not explain his symptoms, so he continued to complain and request lab/blood work and a CT scan. However, his requests were not granted.

On June 27, 2017, plaintiff transferred to MECC, where he continued to express his health concerns. He was seen by Dr. Williams "on numerous occasions," and he showed Dr. Williams the area of his neck that was giving him problems. Dr. Williams said it was not serious enough to order lab/blood tests or a CT scan because it was only arthritis. Plaintiff filed an IRR and met with Whitehead regarding his concerns, but Whitehead was only concerned about resolving the IRR and not the condition of plaintiff's neck.

Plaintiff then began writing letters to Corizon approximately twice per week. Therein, he expressed his concerns in detail, and he complained about the negligence of the medical staff. No one responded. Plaintiff then transferred to SECC on August 30, 2018. Shortly thereafter, plaintiff received a letter informing him that Leija would address his issues. Plaintiff began writing to Leija, but she did not respond. Plaintiff claims that his condition has worsened, in that the nape of his neck has sunk in, and his head has shrunk. He believes the medical staff failed to properly diagnose him, and he seeks $50,000 to $75,000 in damages to cover future hospital bills and other services.

As exhibits to the complaint, plaintiff provided copies of IRRs and Offender Grievances he filed, as well as the written responses he received from Missouri Department of Corrections ("MODOC") staff. Condensed and summarized, plaintiff's exhibits reflect that he complained that his medical condition was not being properly addressed, that Propanolol helped his pain but did not affect the physical changes he observed, that medical staff was ignoring his obvious symptoms, and that his constitutional rights were therefore being violated. Plaintiff repeatedly requested lab work and a CT scan. In response, MODOC officials stated that plaintiff's medical

4

records showed he had been evaluated and treated for his complaints, that he had been seen for follow-up visits and had future visits scheduled, that he voluntarily stopped taking Propanolol even though he reported it helped his pain, that an x-ray revealed only mild neck arthritis, and that a CT scan was not indicated. In an IRR and Offender Grievance identified as MECC-18-354, plaintiff acknowledged that lab work was done due to a recent tattoo, but that it had nothing to do with his health concerns and he wanted a CT scan performed to detect any unknown cancers. In a response directed to MECC-18-354, MODOC officials noted that the lab work plaintiff requested had been completed, with a negative result. It is also noted that past medical evaluations revealed that a CT scan was not medically necessary, and that CT scans are only performed when medically necessary to avoid unnecessary exposure to radiation. Plaintiff filed an Offender Grievance Appeal related to MECC-18-354 acknowledging that the lab work had been performed and the results were negative, but that he believed more tests should be run and a CT scan ordered because his condition was ongoing and worsening.

After filing the instant complaint in this Court, plaintiff filed a letter addressed to the Clerk of the Court, forwarding letters he received from MODOC officials on September 20, 2018 and November 2, 2018. Both letters were sent to plaintiff in response to his complaints about the medical care he was receiving. The letter dated September 20, 2018 states that plaintiff had been seen by a nurse practitioner earlier that month for each Chronic Care Clinic he was enrolled in, and that his primary care physician had implemented a plan that included pain medication, an exercise and weight loss program, and other elements. The November 2, 2018 letter states that an October 23, 2018 x-ray revealed a minimal disc bulge that was not uncommon for plaintiff's age group, and that a treatment plan to manage pain and modify activity was implemented. Both letters state that plaintiff's concerns had been shared with Leija.

5

## Discussion

Having carefully reviewed and liberally construed the complaint, the Court concludes that this action must be dismissed because plaintiff has failed to state a claim upon which relief may be granted.

To establish that a denial of medical care rises to the level of an Eighth Amendment violation, the plaintiff must plead facts that show that the defendant acted with deliberate indifference. *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011). The test for deliberate indifference consists of two prongs. *Id.* First, the plaintiff must show that he suffered from an objectively "serious medical need." *Id.* A "serious medical need" is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (internal citation omitted). Second, the plaintiff must show that the defendant actually knew of, and yet deliberately disregarded, that need. *Schaub*, 638 F.3d at 914.

Deliberate disregard is a mental state "equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposely causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Id.* at 914–15 (quoting *Farmer v. Brennan*, 511 U.S. 825, 835, 839–40 (1994)). Plaintiff must show that the defendant disregarded a known risk to his health. Allegations amounting to medical malpractice or negligence, and allegations that establish only the plaintiff's disagreement with treatment decisions, do not state claims of constitutional significance. *Id., Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

The Court first addresses plaintiff's allegations against Oaks and Dr. Williams, plaintiff's medical treatment providers. Assuming for the sake of argument that plaintiff's condition amounted to an objectively serious medical need, plaintiff's allegations do not establish that Oaks or Dr. Williams were deliberately indifferent to that need. According to the complaint, Oaks and Dr. Williams saw plaintiff for treatment on multiple occasions, listened to his complaints, ordered testing they deemed medically necessary, and exercised their medical judgment to formulate a treatment plan. These allegations establish that Oaks and Dr. Williams exercised their medical judgment in addressing plaintiff's serious medical need, not that they were deliberately indifferent to it. The Eighth Amendment does not prevent medical professionals from exercising their medical judgment, and plaintiff alleges no facts that establish that Oaks and/or Dr. Williams provided a course of treatment that constituted deliberate indifference. *See White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988) (medical professionals "are entitled to exercise their medical judgment."). Indeed, Oaks and Dr. Williams refused to order medical testing that plaintiff believed was necessary. However, "[p]rison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." *Long v. Nix*, 86 F.3d 761, 765-66 (8th Cir. 1996) (internal citations omitted). Additionally, plaintiff's disagreement with the treatment decisions Oaks and Dr. Williams made do not state claims of constitutional significance. *See Popoalii v. Correctional Medical Services*, 512 F.3d 488, 499 (8th Cir. 2008) ("a mere disagreement with treatment decisions does not rise to the level of a constitutional violation"). Finally, plaintiff's allegations that Oaks and/or Dr. Williams were negligent or committed medical malpractice do not state claims of constitutional significance. *See Estelle*, 429 U.S. at

7

106 (medical malpractice does not amount to a claim of constitutional dimension "merely because the victim is a prisoner.").

Plaintiff has also named Whitehead and Leija as defendants. However, plaintiff's allegations do not state a viable claim for relief against Whitehead or Leija because plaintiff does not allege they were directly involved in or personally responsible for any incidents that allegedly deprived him of his constitutional rights. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (to be cognizable under § 1983, a claim must allege that the defendant was personally involved in or directly responsible for the incidents that deprived the plaintiff of his constitutional rights). Plaintiff appears to proceed against Whitehead and Leija because they held administrative or supervisory positions. However, claims sounding in *respondeat superior* are not cognizable under 42 U.S.C. § 1983. *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995).

To the extent plaintiff can be understood to allege that Whitehead or Leija are liable to him because they committed wrongdoing related to his IRRs or grievances, such allegations do not state a claim of constitutional significance. To state a cognizable claim under § 1983, a plaintiff must allege that the conduct of a defendant acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983; *Hamilton v. Schriro*, 74 F.3d 1545, 1549 (8th Cir. 1996). There is no federal constitutional right to a prison grievance procedure, and neither a state law nor a state policy creates one. Therefore, if a state elects to provide a grievance mechanism, violations thereof will not give rise to a § 1983 claim. *See Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (the grievance procedure is procedural right only, and confers no substantive right on inmate).

8

Plaintiff has also named Corizon Health, Inc. as a defendant. However, plaintiff makes no allegations regarding an unconstitutional policy or custom, as necessary to state a claim for relief against Corizon. *See Crumpley–Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004) (citing *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978)) (to state a claim against Corizon, plaintiff must allege that a policy or custom of Corizon was responsible for a constitutional violation). Even if plaintiff had so alleged, he would not state a viable claim for relief against Corizon. As discussed above, plaintiff's allegations fall short of alleging a constitutional violation, and there can therefore be no claim against Corizon for any policies, practices or customs leading to one.

Therefore, for all of the foregoing reasons, the Court will dismiss this action, without prejudice, pursuant to 28 U.S.C. § 1915(e)(2).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed *in forma pauperis* (Docket No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial filing fee of $1.04 within thirty (30) days of the date of this Order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that this case is **DISMISSED** without prejudice. A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that plaintiff's Motion to Appoint Counsel (Docket No. 3) is **DENIED** as moot.

9

**IT IS HEREBY CERTIFIED** that an appeal from this dismissal would not be taken in

good faith.

Dated this 14th day of January, 2019.

Ronnie L. White

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE